**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE,<br><br>                                              Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                                          Respondents. | Case No.:  25-cv-2201-BJC-JLB<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ECF No. 1** |

**BACKGROUND**

Petitioner Jane Doe, a citizen of Cambodia, arrived in the United States in 1985. In 1988, she became a lawful permanent resident, retroactive to October 31, 1985. ECF No. 1-2 at 84, 86. [1] She contends she was abused by both her stepfather and her former partner, and she suffers from cognitive impairment, post-traumatic stress disorder, and alcohol use disorder. *Id*. at 86-89, 105. On November 28, 2001, Petitioner was convicted of public intoxication, after she went door to door in her apartment complex while holding her daughter in an intoxicated state. *Id*. at 40. On September 14, 2009, Petitioner pleaded

---

[1] Page numbers refer to those generated by the Court's CM/ECF system.

guilty to one count of corporal injury to a child and one count of child abuse, stemming from an incident in 2006 when she brought her son to the hospital with a serious head injury. *Id*. at 41. Upon her release from state custody in 2009, Immigration and Customs Enforcement ("ICE") detained Petitioner and initiated removal proceedings. *Id*. at 90; ECF No. 13-1 at 11. On January 13, 2011, an immigration judge ("IJ") determined Petitioner was removable based upon her conviction for corporal injury to a child, denied her applications for relief from removal, and ordered Petitioner removed from the United States to Thailand and, alternatively, Cambodia. ECF No. 1-2 at 55; ECF No. 13-1 at 37. Thereafter, Petitioner was released from ICE custody on an order of supervision after ICE was unable to obtain travel documents to effectuate Petitioner's removal. ECF No. 1-2 at 90; ECF No. 13 at 3.

In March 2023, Petitioner was arrested and convicted of false imprisonment. ECF No. 1 at 11; ECF No. 1-2 at 92. On September 3, 2024, ICE detained Petitioner, and she was transported to Otay Mesa Detention Center, where she remains. ECF No. 1-2 at 132. On December 23, 2024, Petitioner filed a motion to reopen removal proceedings with the Board of Immigration Appeals ("BIA") based upon the vacatur of the 2009 conviction underlying her removal order. ECF No. 1-2 at 19, 134. On April 3, 2025, Petitioner filed a petition for a writ of mandamus seeking an order from this Court directing the BIA to rule on her motion to reopen. *See Doe v. Bondi*, 3:25-cv-00805-BJC-JLB. Petitioner, later, sought a temporary restraining order preventing her removal, which this Court denied. *Doe*, 3:25-cv-008505-BJC-JLB, ECF No. 43. However, the Court issued an administrative stay to prevent removal while it considered its jurisdiction over the petition. *Id*. The BIA denied Petitioner's motion to reopen on July 23, 2025, and Petitioner filed a petition for review before the Ninth Circuit. ECF No. 1-2 at 4.

On March 11, 2025, an IJ conducted a custody redetermination hearing, during which the IJ denied Petitioner's request for release after finding that Petitioner posed both a danger to the community and a flight risk. *Id*. at 184-89. On March 13, 2025, Petitioner appealed to the BIA the decision denying a change in custody. *Id*. at 178-180. On July 23,

25-cv-2201-BJC-JLB

2025, the BIA affirmed the IJ's decision and dismissed Petitioner's appeal.  *Id*. at 235.

Petitioner filed the instant Petition for a Writ of Habeas Corpus on August 25, 2025. ECF No. 1.  Respondents filed a return on October 24, 2025, and Petitioner filed a traverse on November 12, 2025. ECF Nos. 13, 14.  Petitioner filed a motion seeking a status hearing on January 22, 2026. ECF No. 15.

## LEGAL STANDARD

Courts may grant habeas corpus relief to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241; *see also Hamdi v. Rumsfeld,* 542 U.S. 507, 525, 124 S. Ct. 2633, 2644, 159 L. Ed. 2d 578 (2004) ("[T]he writ of habeas corpus remains available to every individual detained within the United States."). Courts are authorized to grant writs pursuant to § 2241 to noncitizens in custody in violation of the Constitution or laws or treaties of the United States.  *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999).

## DISCUSSION

Petitioner argues her continued detention is arbitrary and unlawful, in violation of the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment.  ECF No. 1 ¶ 1.  Petitioner contends that both the IJ and the BIA misapplied legal standards and abused discretion when finding that Petitioner is a danger to the community and, alternatively, a flight risk.  *Id*. ¶¶ 126, 135, 140, 145.  Petitioner requests the Court review the bond proceedings conducted before the IJ and the BIA, determine that her continued detention is unlawful, and issue a writ of habeas corpus directing Respondents to release Petitioner immediately, or in the alternative, direct Respondents to provide her with a new custody hearing.  *Id*. at 38-39.  In their return to the petition, Respondents argue the IJ applied the correct burden of proof, the IJ's denial of bond based on dangerousness and, alternatively, flight risk was not an abuse of discretion, and the IJ and BIA did not engage in biased decision-making.  ECF No. 13 at 7-20.

### I.  Burden of Proof

Petitioner argues that, although the IJ stated the correct burden of proof, the IJ did

25-cv-2201-BJC-JLB

not actually place the burden on the Department of Homeland Security ("DHS").  ECF No. 1 ¶¶ 85-86.  Petitioner claims the IJ's statements reveal the IJ began with a *presumption* against release, indicating the burden was placed on Petitioner.  *Id*.  Petitioner points to the IJ's statement that "[i]t does not appear to the Court that there is a significant reason why the [Petitioner] would continue to appear."  ECF No. 1 ¶ 86 (quoting ECF No. 1-2 at 174).  Petitioner also highlights the IJ's statement that the IJ had "concerns" about Petitioner's commitment to treatment.  *Id*. (quoting ECF No. 1-2 at 174).  Petitioner argues these statements also indicate that the IJ improperly based her conclusions on speculation, and thus, necessarily placed the burden of proof on Petitioner and not DHS.  *Id*.  Petitioner reasons that "whether [Petitioner] would attend hearings is the heart of the flight risk assessment . . . [and] [i]f the IJ was 'not convinced' whether [Petitioner] would or wouldn't attend hearings, DHS had not met its burden to establish such flight risk that no bond could ensure her appearance."  ECF No. 14 at 5.  Petitioner further contends that the IJ's failure to cite the two documents that DHS submitted as evidence is suggestive that the burden of proof was improperly allocated to Petitioner.  ECF No. 1 ¶ 87.  Petitioner argues the IJ "relied almost exclusively" on a previous decision issued during Petitioner's 2011 removal proceedings and contends the IJ improperly combined this record with the bond proceeding, thus relieving DHS of its burden to submit evidence into the bond record.  *Id*. Additionally, Petitioner claims the BIA failed to address her burden of proof argument.  *Id*. ¶ 90.

Respondents argue the IJ identified the correct burden of proof and properly placed it on DHS. ECF No. 13 at 7. Respondents emphasize the IJ's express statement that she "considered all the information, evidence, and arguments presented by the parties and found that the DHS met its burden to demonstrate that [Petitioner] poses a danger to the community and an extreme flight risk in the alternative." *Id*. (quoting ECF No. 1-2 at 188). Respondents argue that the IJ properly considered all evidence in the record, including the 2023 conviction for false imprisonment that Petitioner introduced herself. *Id*. at 9. Respondents submit that the IJ "based her finding of dangerousness not on speculation, but

25-cv-2201-BJC-JLB

rather on Petitioner's lengthy criminal history." *Id*. at 8-9 (citing ECF No. 1-2 at 186). Furthermore, Respondents claim that the IJ's remark that she was not convinced Petitioner would attend future hearings was not the basis for the flight-risk finding. *Id*. at 8. They argue the IJ made this statement when rejecting Petitioner's argument that her prior compliance with ICE check-ins was enough to "overcome the 'precariousness of [Petitioner's] situation' regarding housing, mental health issues and alcohol addiction." *Id*. (quoting ECF No. 1-2 at 188). Respondents contend that the IJ was correct to consider evidentiary findings from the 2011 removal hearing in the bond proceeding because the information was properly made part of the bond record. *Id*. at 10. Finally, Respondents maintain that the BIA did consider Petitioner's burden of proof arguments. *Id*. at 11.

Noncitizens facing prolonged detention are entitled to a bond hearing before a neutral IJ where "the government [must] prove dangerousness or risk of flight by clear and convincing evidence." *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (citing *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011)). Petitioner contends that the IJ's statements regarding a concern for Petitioner's commitment to treatment, and the likelihood of Petitioner's continued appearance in immigration court, are indicative of a presumption against release, speculative, and suggestive that the burden of proof was actually placed on Petitioner. ECF No. 1 ¶¶ 85-86. However, the IJ recounted Petitioner's extensive criminal history – including Petitioner's recent 2023 conviction for false imprisonment – when finding that Petitioner represented a danger to the community. ECF No. 1-2 at 186-87. While Petitioner's commitment to treatment might be speculative, Petitioner's criminal record is undisputed.

The IJ's remark that she had "concerns" about Petitioner's commitment to treatment was made at the conclusion of the bond proceeding. *Id*. at 174 ("I am going to . . . find that the [DHS] has met its burden both as to danger and flight-risk . . . the fact that [Petitioner] did not seek this treatment while she was not detained . . . raise concerns for the Court"). This statement was part of the IJ's findings and does not show a *presumption* against release or that the burden was placed on Petitioner.

25-cv-2201-BJC-JLB

Furthermore, the IJ's statement regarding flight risk is also not indicative that the burden was improperly allocated to Petitioner. *See id*. ("Additionally, while the Respondent was reporting when she was not detained, this was prior to her removal order being final. It does not appear to the Court that there is a significant reason why the Respondent would continue to appear."). This comment was also made at the conclusion of the bond proceeding, and the IJ clarified the point in the bond memorandum dated March 19, 2025:

> The Court acknowledges that the [Petitioner] previously attended her mandated ICE check-ins, however given the precariousness of the applicant's situation [lack of housing, mental health issues, and problems with alcohol addiction] this does not sufficiently assuage the Court's concern, and the Court is not convinced that the [Petitioner] will attend future hearings.

*Id*. at 188. The IJ noted the flight risk determination was based on Petitioner's "lack of housing, mental health issues, and problems with alcohol addiction." *Id*. Moreover, the IJ made the flight risk finding in the alternative to dangerousness. *Id*.; *see Diaz Ortiz v. Smith*, 384 F.Supp.3d 140, 144 (D. Mass. 2019) ("[T]he finding of dangerousness renders irrelevant any complaints [Petitioner] raises about the immigration judge's consideration of his flight risk."). The IJ's statements and findings on danger to the community and flight risk do not demonstrate that the burden of proof was incorrectly placed on Petitioner.

An IJ "need not discuss each piece of evidence submitted." *Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025); *Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006) (accepting the IJ's general statement that he considered all the evidence before him because "there is no evidence that the IJ failed to consider [Petitioner's] documentary evidence"). Here, Petitioner contends that because the IJ did not cite DHS' two evidentiary filings, the burden of proof was improperly allocated to Petitioner. ECF No. 1 ¶ 87. Petitioner has provided no authority supporting this belief.

The IJ did not err when considering evidentiary findings from Petitioner's 2011 removal hearing. "[E]vidence from a removal hearing, if made part of the record, can be considered in a bond hearing." *Joseph v. Holder*, 600 F.3d 1235, 1242 (9th Cir. 2010)

25-cv-2201-BJC-JLB

(citing *In re Adeniji*, 22 I. & N. Dec. 1102, 1115 (B.I.A. 1999)). Such evidence must be introduced into the bond record, and may be introduced "through a summary of merits hearing testimony that is reflected in the Immigration Judge's bond memorandum." *Hasratyan v. Bondi*, 2026 WL 288909, at *3 (C.D. Cal. Feb. 2, 2026) (quoting *Adeniji*, 22 I. & N. Dec. at 1115). This is precisely what the IJ did in the bond memorandum dated March 19, 2025. ECF No. 1-2 at 184-89.

Finally, the BIA did consider Petitioner's burden of proof arguments. The BIA stated in its decision that Petitioner's "arguments on appeal do not persuade [the BIA] of any reversible error." ECF No. 1-2 at 235.

## II. Abuse of Discretion

Petitioner argues the IJ abused her discretion because she failed to consider Petitioner's present dangerousness, made an erroneous flight risk determination, and discriminated against Petitioner's mental health condition. ECF No. 1 ¶¶ 91-113; ECF No. 14 at 6-10. Regarding dangerousness, Petitioner contends the IJ "focused solely on past conduct, without considering current circumstances." ECF No. 1 ¶ 93. Petitioner argues the IJ did not discuss Petitioner's changed circumstances since her 2006 offense and failed to consider evidence of Petitioner's rehabilitation efforts and relapse plan. *Id*. ¶¶ 96-97. As to flight risk, Petitioner argues the IJ disregarded her "prior compliance with ICE supervision." *Id*. ¶ 104. Petitioner also contends the IJ stating that she had "broad discretion" in the bond decision imports a legal standard that is "at odds with due process." ECF No. 14 at 5. Petitioner claims that both the IJ and BIA violated federal anti-discrimination laws when they considered her mental disability as a negative factor in the bond proceedings. ECF No. 1 ¶¶ 109-13. Petitioner argues the IJ violated Ninth Circuit precedent under *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), when she failed "to consider whether any amount of bond or alternative conditions of release would mitigate" flight risk concerns. *Id*. ¶ 114. Lastly, Petitioner contends the IJ and BIA are not neutral adjudicators. *Id*. ¶¶ 115-21.

Respondents argue the IJ properly assessed Petitioner's current dangerousness and

considered all evidence when determining that Petitioner is a danger to the community. ECF No. 13 at 11-15. Respondents emphasize the IJ considered Petitioner's extensive criminal history when making this finding, including the recent 2023 arrest and conviction for false imprisonment. *Id*. at 13. Moreover, Respondents contend the IJ did consider Petitioner's circumstances since her 2006 offense. *Id*. at 14. As to flight risk, Respondents submit that the IJ "acknowledged Petitioner's prior attendance at ICE check-ins" but still found Petitioner's circumstances warranted a flight risk determination. *Id*. at 16-17. Respondents maintain that the IJ and BIA did not violate anti-discrimination laws when they considered Petitioner's mental health conditions in the bond proceedings. *Id*. at 17. Respondents argue that due process did not require the IJ to consider whether any amount of bond or alternative conditions of release would mitigate Petitioner's flight risk. *Id*. at 18-19. Finally, Respondents contend that the IJ and BIA did not engage in biased decision-making. *Id*. at 19.

Due process requires individualized factual determinations in immigration bond proceedings. *See Hernandez*, 872 F.3d at 991 (holding that a constitutional bond hearing requires consideration of the detainee's specific circumstances). Detention determinations must reflect current conditions rather than relying on past findings. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. Jan. 29, 2019) (emphasizing that the IJ must consider changed circumstances since a prior bond determination); 8 C.F.R. § 1003.19(e). The INA precludes judicial review of an IJ's discretionary findings in bond hearings. *See* 8 U.S.C. § 1226(c).

The IJ's denial of bond based on dangerousness, and alternatively flight risk, was not an abuse of discretion. The IJ considered Petitioner's criminal history when determining Petitioner is a danger to the community. ECF No. 1-2 at 186-87. This included the 2001 arrest on charges of child endangerment and public intoxication, the 2006 child abuse incident, the 2007 arrest for public disturbance, and the 2023 arrest where Petitioner "admits to having relapsed and drunk heavily enough that she does not have any recollection of the events that took place which led to her conviction of false

imprisonment." *Id*. The IJ also assessed changes in Petitioner's circumstances since the 2006 offense, including Petitioner's rehabilitation efforts, but determined "these factors do not mitigate [Petitioner's] danger to the community." *Id*. at 187. As to flight risk, the IJ did acknowledge Petitioner's prior attendance at ICE check-ins but still found that Petitioner was a flight risk due to other factors, such as Petitioner's lack of housing, mental health issues, and alcohol addiction. *Id*. at 188. As discussed above, the IJ's flight risk determination was made in the alternative to finding that Petitioner was a danger to the community, thus, the IJ was not required to engage in a flight risk analysis. *Id*.; *see Diaz Ortiz*, 384 F.Supp.3d at 144. This Court may not reweigh the evidence to reach a different conclusion. *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) ("Under an abuse of discretion standard, 'we cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2011))).

The IJ's statement that she had "broad discretion" in the bond decision is not indicative of a due process violation or an abuse of discretion. IJs retain discretion in immigration bond proceedings. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."); *see also Ortega-Rangel v. Sessions*, 313 F.Supp.3d 993 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40) ("An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations."). Petitioner is correct that constitutionally mandated bond proceedings involve a heightened burden on DHS than bond proceedings arising under 8 U.S.C. § 1226(a). *See Singh*, 638 F.3d at 1200 ("the government must prove by clear and convincing evidence that continued detention is justified"). Therefore, IJs have less discretion in these bond hearings than in § 1226(a) proceedings. Nevertheless, the IJ's statement that she had "broad discretion," in and of itself, does not demonstrate that a due process violation or an abuse of discretion occurred.

The IJ and BIA did not violate anti-discrimination laws when they considered

Petitioner's mental health conditions in the bond proceedings. "IJs may consider [mental health-related evidence], where reliable, as part of the separate determination of dangerousness." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 993-94 (9th Cir. 2018); *see also Zadvydas v. Davis*, 533 U.S. 678, 691 (2001) ("In cases in which preventative detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps create the danger."). Petitioner cites to 42 U.S.C. § 12101 (Americans with Disabilities Act of 1990) and 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973) and claims the IJ violated Section 504 of the Rehabilitation Act when she considered Petitioner's mental health issues in her decision denying bond based on flight risk. As discussed above, the IJ here determined that Petitioner was a danger to the community and, alternatively, a flight risk. ECF No. 1-2 at 184. The IJ did not abuse her discretion when she considered Petitioner's mental health evidence and denied bond based on dangerousness. *See Gomez-Sanchez*, 892 F.3d at 993-94. Petitioner has provided no authority to substantiate her claim that the IJ violated anti-discrimination laws.

The Ninth Circuit has clarified that IJs are not obligated to consider alternatives to detention, such as supervised release. *See Martinez*, 124 F.4th at 786 (finding that due process does not require "that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community"). "[A]n IJ need only consider 'alternative conditions to release' once the IJ determines that the detainee is 'neither dangerous nor so great a flight risk as to require detention without bond.'" *Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. Apr. 14, 2020) (quoting *Hernandez*, 872 F.3d at 991); *see also Hernandez v. Lynch*, No. 2016 WL 7116611, at \*5 (C.D. Cal. Nov. 10, 2016) ("Immigration Judges are required to consider alternatives to detention *when setting bond amounts*." (emphasis added) (citing *Rodriguez v. Robbins*, 804 F.3d 1060, 1087-88 (9th Cir. 2015), *overruled by Jennings*, 583 U.S. 281)). Again, the IJ here determined that Petitioner was a danger to the community and, alternatively, a flight risk. ECF No. 1-2 at

25-cv-2201-BJC-JLB

184. Because the IJ found that Petitioner was a danger to the community, the IJ was not required to consider alternatives to detention. *See Martinez*, 124 F.4th at 786.

Finally, Petitioner presents insufficient evidence to show that the BIA and IJ engaged in biased decision-making in her case. Petitioner submits various news articles, law review articles, and empirical data to show that IJs and the BIA, generally, are not neutral adjudicators. ECF No. 1 ¶¶ 116-19. Petitioner argues "[t]his context infected the bond proceedings in this case" because DHS "presented no evidence relevant to flight risk or danger, and made few arguments in support of its position . . . [y]et the IJ nevertheless found that DHS had met its burden." *Id*. ¶ 120. Petitioner further argues "the BIA's denial of [Petitioner's] bond appeal with little analysis also evidences bias." *Id*. ¶ 121. As discussed above, the IJ's findings here were supported by the record, including Petitioner's recent 2023 arrest and conviction for false imprisonment that Petitioner submitted herself, and the IJ did not abuse her discretion when determining Petitioner was a danger to the community and, alternatively, a flight risk. Furthermore, the length of the BIA's analysis is not, on its own, indicative of a bias exhibited toward Petitioner. Accordingly, the Court rejects Petitioner's arguments concerning bias because the record does not reveal the IJ or BIA engaged in biased decision-making here.

Based on the foregoing, the petition for Writ of Habeas Corpus is **DENIED**. Plaintiff's motion for a hearing is **DENIED as moot**. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated:  April 28, 2026

_____
Honorable Benjamin J. Cheeks
United States District Judge

11

25-cv-2201-BJC-JLB